IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Nicholas S. Williams, | ) CIVIL ACTION NO. 9:14-0787-RMG-BM |
| Plaintiff, | ) |
| v. | ) **REPORT AND RECOMMENDATION** |
| Major Jones, Supt. LCDC; James Metts, Sheriff Lexington County; and William Miles, MD, LCDC in individual and official capacities, | ) |
| Defendants. | ) |

This action has been filed by the Plaintiff, pro se, pursuant to 42 U.S.C. § 1983. Plaintiff, a pretrial detainee at the Lexington County Detention Center, alleges violation of his constitutional rights by the named Defendants.

The Defendant William Miles filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P., on January 16, 2015. The remaining two (2) Defendants, Kevin Jones and James Metts, also filed a motion for summary judgment that same date. As the Plaintiff is proceeding pro se, a Roseboro order was entered advising Plaintiff of the importance of a dispositive motion and of the need for him to file an adequate response. Plaintiff was specifically advised that if he failed to respond adequately, the Defendants' motions may be granted, thereby ending his case. Plaintiff thereafter filed a response in opposition to the motions on February 11, 2015, following which the Defendants Jones and Metts filed a reply memorandum on February 23, 2015.



- 1 -

Defendants' motions are now before the Court for disposition.[1]

## Background and Evidence

Plaintiff alleges in his verified complaint[2] that, since August 2012, he has been "forced to sleep in overcrowded rooms 3 people in one man cell . . . ." Plaintiff also alleges that during this time he "fell and hit my back on the bench I was forced to sleep under". Plaintiff complains that he has been stepped, urinated on, and that his cell has roaches. Plaintiff further alleges that he has "been refused medical attention when I put in sick calls they denied me". Although Plaintiff concedes that he was prescribed some Motrin, he alleges that when he told "them it was not working they took me for x-rays and I haven't heard anything since". Plaintiff also complains that he has never been able to see a doctor "on the outside".

Plaintiff also alleges that he has been "denied access to a law library or anything to help me with my case . . .". Plaintiff complains that he has been awaiting trial for over two years and needs "to learn about [his case] to help with my case . . . .", but that he has been told he is not entitled to a law library because "this is a temporary housing unit". Plaintiff alleges that the Defendant Major Jones should have known about these matters, even though Plaintiff has not had

---

[1] This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d) and (e), D.S.C. The Defendants have filed motions for summary judgment. As these motions are dispositive, this Report and Recommendation is entered for review by the Court.

[2] This lawsuit was originally filed by three (3) jail inmates as one action. By Order filed May 22, 2014, the case was broken into three separate cases, and the Plaintiff herein then filed a separate verified Complaint setting forth his claims. In this Circuit, verified complaints by pro se prisoners are to be considered as affidavits and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991).



access to talk to him, that the Defendant Sheriff James Metts has been aware of the overcrowding at the jail "for years", and that the Defendant Miles (a physician) has received "many" requests from the Plaintiff to be seen for his medical complaint but that "proper care" has not been provided. Plaintiff has attached to his Complaint copies of two health service forms relating to his back injury. Plaintiff seeks monetary damages, as well as certain injunctive and/or declaratory relief. See generally, Plaintiff's Verified Complaint (Court Docket No. 1-2).

        In support of summary judgment in the case, the Defendant Kevin Jones has submitted an affidavit wherein he attests that he is a Major assigned to the Lexington County Detention Center, where he serves as Jail Administrator. Jones attests that he is employed by the Sheriff of Lexington County, the Defendant James Metts, and that Metts had no personal involvement in the allegations contained in Plaintiff's Complaint. Jones attests that, as Jail Administrator, he oversees the support services at the Detention Center as well as the general maintenance of the Detention Center. Jones attests that he does not, however, recall having any personal interaction with the Plaintiff during his incarceration at the Detention Center.

        Jones attests that the Lexington County Sheriff's Department contracts for licensed and qualified independent contractors to provide medical and pest control services for the detainee population at the Detention Center, and that at the time encompassed by Plaintiff's complaints, the Sheriff's Department had a contract with Correct Care Services (CCS) to provide medical services to the detainee population. Jones attests that pursuant to this contract, CCS is required to employ qualified and licensed medical staff, to include around the clock nursing services, physicians, and dentists, and that at all times CCS has maintained a national accreditation from the National Commission for Correctional Health Care. Jones attest that Detention Center personnel are not



professional medical care providers, and that they rely on the professional medical opinions of the CCS employees regarding appropriate medical care for detainees.  Jones attests that because he is not a medical professional, he relies on the medical staff for any medical decisions, and defers to the medical staff regarding an inmate's medical treatment.

Jones attests that all inmates are treated the same under the policies and procedures of the Detention Center, and that from his review of Plaintiff's Detention Center records, it appears that all policies have been followed and that Plaintiff was not treated any differently than any other inmate.  Jones further attests that local detention facilities are not required to have a law library, but that Plaintiff has been provided writing materials and legal forms during his incarceration at the Detention Center, as is evidenced by Plaintiff's filings in this lawsuit.  With respect to Plaintiff's complaint of overcrowding, Jones attests that while most of the cells of the Detention Center have two beds in each room, inmates are regularly required to be triple celled, with the third inmate being provided with a mattress which is placed on the floor.  Jones attests that while the inmate population at the Detention Center currently exceeds the design goal for the facility, the number of inmates does not exceed the Detention Center's capacity to provide security, shelter, food, medical supplies and other necessary services for incarcerated individuals.

As for Plaintiff's complaints about roaches in his cell, Jones attests that the Detention Center has a contract with Bugman Pest Elimination to provide pest control services at the Detention Center, and that as part of this contract an exterminator comes once a month and/or as needed to spray at the facility, and in doing so is required to utilize environmentally friendly pesticides that are not harmful or obtrusive to humans.  Additionally, all inmates at the Detention Center are provided cleaning supplies and tools on a daily basis to clean their cells and personal items, including their



toilets, and that based upon a review of the jail records Plaintiff has at all times been provided adequate necessities of life and been treated in accordance with the policies and procedures of the Detention Center. Finally, Jones attests that he has not been personally involved in any of the allegations contained in Plaintiff's Complaint, nor has he ever received any grievances and/or Requests to Staff from the Plaintiff. See generally, Jones Affidavit.

    The Defendants have also submitted an affidavit from Melissa Lyons, who attests that she is the Prison Rape Elimination Act Coordinator, ICE Supervisor, and Grievance Manager for the Lexington County Detention Center. Lyons attests that she is familiar with the Plaintiff from his time as a detainee at the Lexington County Detention Center, and that she has reviewed the relevant grievances and Inmate Request forms that Plaintiff filed during his recent period of incarceration, copies of which are included in Plaintiff's Inmate Records. Lyons attests that the Detention Center has an established Detainee Grievance Procedure which allows detainees to file grievances related to the conditions of their detainment, and that pursuant to this procedure, detainees must file a grievance within three (3) days after a potentially grievable event has occurred, following which the Bureau Commander and/or his designee has ten (10) days to provide a written response to the grievance. If an inmate is not satisfied with the response received, the inmate may then file a written appeal to the Chief Deputy/Assistant Sheriff within forty-eight hours of the receipt of the response to the grievance, with all responses then made by the Chief Deputy/Assistant Sheriff on the Appeal being considered final. Lyons attests that copies of all appeals and responses are electronically stored and maintained for a period of three years.

    Lyons attests that she has reviewed Plaintiff's grievance records, and that he only filed two grievances, both relating to his medical care, during his recent period of incarceration. On



March 7, 2014 (which was *after* the date of the original Complaint filed in this matter) Plaintiff filed a grievance requesting that he be seen by medical due to him having fallen in his cell. A copy of this grievance is attached to Lyons' affidavit as Exhibit A. Lyons attests that this grievance was received on March 11, 2014, and that because it was of a medical nature, it was forwarded to medical for a response. Lyons attests that medical responded to that grievance on March 16, 2014, and that this response along with attached supporting documents showing that Plaintiff was seen and prescribed some Motrin are attached to her affidavit as Exhibit B. Lyons attests that Plaintiff did not appeal the response to this grievance.

Lyons attests that Plaintiff filed another grievance on August 14, 2014 (well after the filing of this lawsuit), again alleging that he had been denied medical care, a copy of which is attached to her affidavit as Exhibit C. This request concerned the fall which had been the subject of his first grievance, and Lyons noted in her response that Plaintiff had been seen by Nurse Rogers the previous day. Lyons attests that this time Plaintiff did appeal her response, although this appeal was technically not timely as it was not filed within forty-eight hours of Plaintiff's receipt of the response to his grievance, but that she still responded to his appeal by noting that Plaintiff was apparently looking for followup care and advising him to fill out a sick call form.

With respect to Plaintiff's claims relating to overcrowding and being denied access to a law library, Lyons attests that Plaintiff has not filed any grievances relating to these issues. See generally, Lyons' Affidavit, with attached Exhibits [Grievance Documents].

Finally, the Defendant Dr. William Miles has submitted an affidavit from Dr. Oliver Harden, who attests that he was asked to review Plaintiff's medical records and render an opinion regarding the medical care that Dr. Miles and Correct Care Solutions had provided to the Plaintiff



during the relevant time period. Dr. Harden attests that he is on the medical staff of the Columbia Regional Care Center of Geo Care, Inc., that he specializes in internal medicine, and previously served as the Medical Director at the Detention Center. Dr. Harden attests that he has reviewed Plaintiff's Complaint as well as Plaintiff's medical records, and that these medical records establish that Dr. Miles and the Correct Care Solutions medical staff provided medical care to the Plaintiff for all of his alleged medical conditions. Dr. Harden attests that Plaintiff was provided medical care with respect to the fall and alleged back injury Plaintiff refers to in his Complaint, as well as for other complaints, including a gastroesophageal disorder, obtaining a restricted medical diet, mental health care, chest pain care and treatment, and detox medication. Dr. Harden attests that Plaintiff has had multiple x-rays taken, including x-rays of his lower back, that lab tests were run, and that as part of his care and treatment Plaintiff has been provided with various medications (listed in the Affidavit). Dr. Harden attests that Plaintiff received timely responses and appropriate care from Dr. Miles and the Correct Care Solutions medical staff to his medical complaints. See generally, Harden Affidavit.

In his response in to the Defendants' motions Plaintiff reiterates the allegations of his Complaint, but has not provided any documentary or testamentary evidence in support of his claims. Plaintiff does state that after writing several requests for medical care he was seen by Dr. Miles, who took some x-rays and put him "on something", but nevertheless complains that he was "never seen . . .". Plaintiff also states that he "wrote several requests" about the issues raised in his Complaint, but does not have any copies.

## Discussion

Summary judgment shall be rendered forthwith if the pleadings, depositions, answers



to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Rule 56, Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991). Once the moving party makes this showing, however, the opposing party must respond to the motion with specific facts showing there is a genuine issue for trial. Baber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992). Further, while the Federal Court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, see Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972), the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a Federal claim, nor can the Court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Social Services, 901 F.2d 387 (4th Cir. 1990). Here, after careful review and consideration of the arguments and evidence presented, the undersigned finds and concludes for the reasons set forth hereinbelow that the Defendants are entitled to summary judgment in this case.

**I.**

First, it is readily apparent that Plaintiff failed to exhaust his administrative remedies prior to filing this lawsuit. Pursuant to 42 U.S.C. § 1997e(a), "[n]o action shall be brought with respect to prison conditions under section 1983 of this Title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Through the enactment of this statute, "Congress has mandated exhaustion . . . , regardless of the relief offered through administrative procedures." Booth v. Churner, 532 U.S.



731, 741 (2001); see Porter v. Nussle, 534 U.S. 516 (2002); Larkin v. Galloway, 266 F.3d 718 (7th Cir. 2001) [exhaustion required even though plaintiff claimed he was afraid]; see also Claybrooks v. Newsome, No. 00-7079, 2001 WL 1089548 (4th Cir. Sept. 18, 2001) (unpublished opinion) [applying Booth v. Churner to affirm district court's denial of relief to plaintiff]. Accordingly, before Plaintiff may proceed with these claims in this Court, he must first have exhausted the administrative remedies that were available to him at the Detention Center.

The Defendants have the burden of showing that Plaintiff failed to exhaust his administrative remedies. See Anderson v. XYZ Correctional Health Services, Inc., 407 F.3d 674, 683 (4th Cir. 2005) [inmate's failure to exhaust administrative remedies is an affirmative defense to be both pled and proven by the Defendant]; Jones v. Bock, 549 U.S. 199 (2007). To meet this burden, the Defendants have submitted an affidavit from Melissa Lyons, Grievance Manager for the Detention Center, with attached exhibits showing that Plaintiff clearly failed to exhaust his administrative remedies with respect to his claims prior to filing this lawsuit.

Initially, Lyons attests that, other than with respect to his alleged fall and resulting back injury, Plaintiff did not file *any* grievances relating to any of his other claims. Lyons attests that copies of all appeals and response are electronically stored and maintained for three (3) years, and that Plaintiff only filed two grievances relating to his claims in this lawsuit, both relating to his back injury, during the relevant time period. Although Plaintiff states in his response to the Defendants' motions that he did write "several requests" about "these matters", he has presented no evidence to show that he ever filed any grievances relating to any other issues. Plaintiff cannot simply, in response to probative evidence that no record exists of him ever having submitted a grievance concerning an issue raised in this lawsuit, submit a response saying, in effect, "yes I did", and expect



to survive summary judgment, because if that is all it took to defeat evidence of a failure to exhaust, then this defense could never be successfully asserted by a Defendant. Cf. Malik v. Sligh, No. 11-1064, 2012 WL 3834850, at * 4 (D.S.C. Sept. 4, 2012) [Finding that Plaintiff's self-serving contention, in response to evidence to the contrary, that he did submit a grievance was "simply not enough to create a genuine dispute as to any material fact"]; see also Nat'l Enters., Inc. v. Barnes, 201 F.3d 331, 335 (4th Cir. 2000)[Holding that a self-serving affidavit was insufficient to survive summary judgment]; King v. Flinn & Dreffein Eng'g Co., No. 09-410, 2012 WL 3133677, at * 10 (W.D.Va. July 30, 2012)[Finding no genuine issue of material fact where only evidence was "uncorroborated and self-serving testimony"], citing Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002); Cf. Poe v. Bryant, No. 12-3142, 2013 WL 6158023, at * 2 (D.S.C. Nov. 21, 2013)[Holding that defendants satisfied their burden of showing a failure to exhaust administrative remedies with exhibits detailing the grievance process and showing that Plaintiff failed to exhaust this remedy, and that Plaintiff's contradictory statements in response were not sufficient to avoid summary judgment in light of the contrary evidence]; see also Harvey v. City of Philadelphia, 253 F.Supp.2d 827, 829 (E.D.Pa. 2003) [Summary judgment granted where Plaintiff claimed to have exhausted administrative remedies, but did not present any evidence to challenge defendants' evidence that he did not pursue his administrative remedies]. Therefore, these other claims must all be dismissed. Cannon v. Washington, 418 F.3d 714, 719 (7th Cir. 2005)[Prisoner may not file a lawsuit before exhausting his administrative remedies].

As for Plaintiff's remaining medical claim, even though Plaintiff did file grievances relating to his back injury, it is again readily apparent that he filed these grievances during the pendency of this lawsuit. However, Plaintiff is required to exhaust his administrative remedies



*before* filing a lawsuit. Cannon, 418 F.3d at 719 [Prisoner may not file a lawsuit before exhausting his administrative remedies]. Therefore, the fact that Plaintiff did file grievances relating to this one particular claim does not provide a basis for allowing him to proceed with a lawsuit with respect to that claim, where he only did so after he had already filed this lawsuit. See Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999) [Prisoner "may not exhaust administrative remedies during the pendency of the federal suit."]. In any event, Plaintiff also did not even appeal his first grievance; Jordan v. Miami-Dade County, 439 F.Supp.2d 1237, 1241-1242 (S.D.Fla. 2006)[Remedies not exhausted where inmate did not appeal denial]; while he did not timely appeal his second grievance.

Therefore, the Defendants are entitled to summary judgment in this case for failure of the Plaintiff to exhaust his administrative remedies prior to filing this lawsuit. Hyde v. South Carolina Dep't of Mental Health, 442 S.E.2d 582, 583 (1994) ["Where an adequate administrative remedy is available to determine a question of fact, one must pursue the administrative remedy or be precluded from seeking relief in the courts"]; Spruill v Gillis, 372 F.3d 218, 227-232 (3d Cir. 2004) [Discussing necessity of pursuing all administrative remedies to the end]; Malik, 2012 WL 3834850, at * 4 ["A court may not consider, and must dismiss, unexhausted claims"].

**II.**

Finally, even assuming, for purposes of further discussion of Plaintiff's medical claim, that his filing of grievances relating to this claim was sufficient to allow him to proceed with respect to this claim; but see, discussion, supra; it would still be subject to dismissal. In order to avoid summary judgment on this claim, Plaintiff needs to have submitted evidence sufficient to give rise to a genuine issue of fact as to whether any named Defendant was deliberately indifferent to his serious medical needs. Estelle v. Gamble, 429 U.S. 97, 106 (1976); Farmer v. Brennen, 511 U.S.



825, 837 (1994); Sosebee v. Murphy, 797 F.2d 179 (4th Cir. 1986); Wester v. Jones, 554 F.2d 1285 (4th Cir. 1977); Russell v. Sheffer, 528 F.2d 318 (4th Cir. 1975); Belcher v. Oliver, 898 F.2d 32 (4th Cir. 1990).[3]  Plaintiff has failed to submit any such evidence.

Plaintiff alleges in his verified Complaint that he fell in his cell and hurt his back. Plaintiff then alleges that when he was seen "after 2 years" he was prescribed Motrin, was subsequently taken for x-rays, but had not seen a doctor since.  However, Plaintiff's own exhibits (attached to his verified Complaint) include a Health Service Request form which is dated March 6, 2014 and in which Plaintiff complains that he had hit his back on a stool in his cell, was having back pain, and needed to see a doctor.  This document reflects that it was received by the nurse on March 10, 2014 and that Plaintiff was thereafter seen that same day.[4]  The progress note entry indicates that Plaintiff advised that he had hit his back on the stool for the table while trying to go to bed, and was "very hostile and upset that he was in a room with two other I/M . . ." The medical entry further reflects that when he was advised that he would be charged a $5 fee, Plaintiff responded that it was the County's responsibility to pay that fee, apparently because he believed his injury was

---

[3] Since Plaintiff was a pre-trial detainee during the time period set forth in the complaint, his claim is evaluated under the due process clause of the Fourteenth Amendment. Bell v. Wolfish, 441 U.S. 520, 535 (1979).  However, for purposes of consideration of Plaintiff's claim, the standard of whether he received constitutionally adequate medical care is essentially the same as that of a convicted prisoner. See Martin v. Gentile, 849 F.2d 863, 870 (4th Cir.  1988)[Holding that the 14th Amendment guarantees at least 8th Amendment protections]; Estate of Miller, ex. Rel. Bertram v. Tobiasz, 680 F.3d 984, 989 (7th Cir. 2012)["The same standard applies for determining claims of deliberate indifference to the serious medical conditions of pretrial detainees and incarcerated individuals, though pursuant to the Fourteenth Amendment for pretrial detainees rather than the Eight Amendment."].

[4] While the entry date for the service report was March 13, 2014, it reflects that services were actually rendered on March 10, 2014.



the Detention Center's fault because of housing issues. The progress note also reflects that it was explained to Plaintiff that medical had no authority over housing and that they were unable to change his housing assignment, and that when Plaintiff stated he still needed treatment, he was prescribed some Motrin for comfort. See generally, Plaintiff's Exhibit (attached to Complaint). In addition to this documentation, Plaintiff's grievance documents show that he was seen by medical staff both when he initially asked to be seen as well as subsequently, and that he also received an x-ray of his back. Further, the Defendants have provided an affidavit from a medical professional who attests that he has reviewed Plaintiff's medical records and that Plaintiff received proper and appropriate care for his complaints. Lyons Affidavit, with attached exhibits; Harden Affidavit.

There is nothing in the evidence submitted to this Court to show that Plaintiff's constitutional rights were violated. The Defendants have provided an affidavit from a medical professional, as well as copies of Plaintiff's grievance documents, which show that Plaintiff received prompt and appropriate care for his medical complaints, and Plaintiff's own exhibits reflect that he was seen just a few day after his injury and was prescribed some medication. Conversely, Plaintiff has presented no medical evidence whatsoever to support his claim that he received constitutionally inadequate medical care. Scheckells v. Goord, 423 F.Supp. 2d 342, 348 (S.D.N.Y. 2006) (citing O'Connor v. Pierson, 426 F.3d 187, 202 (2d Cir. 2005) ["Lay people are not qualified to determine...medical fitness, whether physical or mental; that is what independent medical experts are for."]. While Plaintiff was obviously dissatisfied with the medical care he received, he cannot simply allege in a conclusory fashion that he did not receive *constitutionally* adequate medical care or attention, otherwise provide no supporting evidence other than his own subjective opinion, and expect to survive summary judgment, particularly when the Defendants have submitted medical

- 13 -



records as well as sworn testimony from a medical professional which refute his claims. See House v. New Castle County, 824 F.Supp. 477, 485 (D.Md. 1993) [Plaintiff's conclusory allegations insufficient to maintain claim]; Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1987) ["Even though pro se litigants are held to less stringent pleading standards than attorneys the court is not required to 'accept as true legal conclusions or unwarranted factual inferences.'"]; Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985)[Disagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim absent exceptional circumstances]; see also Green v. Senkowski, 100 Fed.Appx. 45 (2d Cir. 2004) (unpublished opinion) [finding that plaintiff's self-diagnosis without any medical evidence insufficient to defeat summary judgment on deliberate indifference claim].

In sum, Plaintiff's personal opinion notwithstanding, nothing in the evidence and exhibits before the Court gives rise to a genuine issue of fact as to whether any named Defendant was deliberately indifferent to Plaintiff's serious medical needs. Levy, No. 96-4705, 1997 WL 112833 ["A defendant acts with deliberate indifference only if he or she 'knows of and disregards' an excessive risk to inmate health or safety.'"]. Therefore, even assuming for purposes of summary judgment that Plaintiff's medical claim had been properly exhausted at the administrative level, it is without merit and should be dismissed.

## Conclusion

Based on the foregoing, it is recommended that the Defendants motions for summary judgment be **granted,** and that this case be **dismissed.**



The parties are referred to the Notice Page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

March 11, 2015
Charleston, South Carolina



### Notice of Right to File Objections to Report and Recommendation

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> Post Office Box 835
> Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

